SHRYOCK & ROWLAND v. J. D. LATIMER ET AL.

(Case No. 1086.)

1. HOMESTEAD — PLACE OF BUSINESS.— A man owned and occupied with his family an urban homestead in 1876, and carried on the business of a merchant in the lower story of his dwelling-house. After ceasing to do business as a merchant in 1877, he removed his family to a new home, owned by him in a different portion of the same town, and rented out the old home place for mercantile and other purposes, using the rents to aid in supporting his family, and intending to again use it as a place to carry on his business as a merchant if he should recover from financial embarrassments. In trespass to try title brought by the purchaser at sheriff's sale, under a judgment against the husband and wife in 1878, *held* —

(1) While the constitution protects from forced sale the place of business of the head of the family in a city, town or village, though situate in a different locality from the home place, this protection exists only so long as it is used for the purposes contemplated by the constitution.

(2) The fact that he contemplated resuming business in the store-house, if able to do so at some future time, was immaterial.

(3) The law no more protects a man in a place for business which he is not using, and which he is making no preparation to use, than it does in a place for a home which is in fact not a home, and in reference to which no steps have been taken to make it a home for the family.

2. SAME.— The judgment creditor purchased at execution sale other lots which had been conveyed by the husband to his wife for the consideration recited, of money borrowed from her, and her deed was recorded before any right under the judgment vested in the purchaser at sheriff's sale. *Held*, that in the absence of any evidence of fraud, the conveyance passed the title to the wife.

ERROR from Bowie. Tried below before the Hon. B. T. Estes. The opinion states the case.

*Crawford & Smith,* for plaintiffs in error.

I. A store-house entirely disconnected from the family residence, blocks and streets intervening, forms no part of the homestead, and

is not exempt from forced sale, unless actually occupied as a place of business by the head of the family. The physical characteristics and geography of the premises must be such that, when taken in connection with their use, will convey notice to persons of ordinary prudence who deal with him that they are his homestead.

II. Whether or not the property in controversy is a part of the homestead must be determined by the *status* of the property and the parties at the time the adversary right is acquired. Iken *v.* Olenick, 43 Tex., 195.

*W. H. Tilson*, also for plaintiffs in error.

*F. M. Henry*, for defendants in error.

I. The court did not err in sustaining Latimer's claims to lot 6, in block 21, in said town, as part of the homestead of the defendants in error, Latimer and wife, because the proof shows that the defendants in error, on the 10th day of January, 1876, occupied the store-house on said lot 6, block 21, as a place of dwelling and also as a place to exercise the calling and business of the defendant in error, J. D. Latimer, the head of the family, he being a merchant then engaged in selling goods in said store-house; that on said 10th day of January, 1876, the said defendants in error, Latimer and wife, did designate said lot 6, block 21, and the east half of block 49, as their homestead; that the said defendants in error did occupy the said lot 6, in block 21, and east half of block 49, continuously from said 10th day of January, 1876, until January, 1878, long after the rendition of the judgment of the plaintiffs in error against Cully & Latimer, and long after the issuance of the execution and levy of the same upon the said lots and blocks. Const., sec. 51; Barnes *v.* White, 53 Tex., 628.

II. The court did not err in holding that the defendant in error, J. D. Latimer, was, at the date of levy and sale of said lot, a merchant, and as such was entitled to an exemption of said store-house and lot as a place of business for the head of the family. Const., sec. 51; Barnes *v.* White, 53 Tex., 628.

III. Defendants in error deny that the court erred in sustaining the deed of conveyance from J. D. Latimer to Kittie Latimer, as complained of by plaintiffs in error in their first assignment of error, because the proof shows that said conveyance was made in satisfaction of a debt due to her for loaned money in her separate right, being an open and lawful transaction.

IV. The temporary suspension of business as a merchant by de-

fendant in error, J. D. Latimer, on account of pecuniary embarrass-
ment, did not work a forfeiture of his homestead right and
exemption. Const., sec. 51; Barnes v. White, 53 Tex., 628.

STAYTON, ASSOCIATE JUSTICE.— The property in controversy origi-
nally belonged to J. D. Latimer, one of the defendants in error, who
in copartnership with one Cully carried on in a store-house on the
lot a mercantile business until about the close of the year 1876, at
which time he became financially embarrassed and ceased to do busi-
ness as a merchant; since that time he has never conducted on the
property any mercantile or other business.

The upper part of the house upon the lot was used by Latimer
(he being a married man) as a residence, from the first of the year
1876 until about the 1st of November, 1877, at which time he re-
moved his family to a house on the east half of block 49, in the
same town, which was distant from the lot upon which the store-
house is, some three or four hundred yards, where with his family
he has continuously resided since that time.

Latimer has not occupied the store-house for any purpose since
his removal therefrom, and about the 1st of September, 1877, rented
it to Charles Block, who occupied it and used it for mercantile pur-
poses about one year, and it has been rented to other persons con-
tinuously since Block ceased to use it; the rent for the property has
been about $50 per month.

Since Latimer ceased to do a mercantile business in 1876, he has
been engaged in clerking for other persons, and doing such other
work as he could get to do, and since that time has been mainly
dependent upon the rents received from the property in controversy
for a support.

The property in controversy was sold under an execution which
issued under a judgment in favor of plaintiffs in error against Cully
& Latimer, and was bought by plaintiffs in execution, who received
a deed from the sheriff therefor on the 12th of February, 1878.

This action was brought to try title to the property above
referred to, and to other town lots which will be hereafter referred
to, against Latimer and wife, who as a defense, in so far as the
store-house and lot upon which it stands are concerned, set up that
the same was protected to them against forced sale, under the con-
stitution, as the place of business of the husband, and they claim
that it has always been the intention of Latimer to resume business
as a merchant when his financial condition is such as to enable him
to do so.

The constitution of this state protects to the family in a city, town or village a homestead which "shall consist of lot or lots, not to exceed in value $5,000 at the time of their designation as the homestead, without reference to the value of any improvements thereon; *provided*, that the same shall be used for the purposes of a home, or as a place to exercise the calling or business of the head of a family."

This court has held that the place of the home of the family, as well as the place of business of the head of the family, in a city, town or village, although not upon contiguous lots, was protected from forced sale, so long as used for the purposes contemplated by the constitution. Miller *v.* Menke, Galveston Term, 1880.

The constitution recognizes that to establish and preserve a homestead in a city, town or village, the property must " be used for the purposes of a home, or as a place to exercise the calling or business of the head of a family;" and it also recognizes "that any temporary renting of the homestead shall not change the character of the same, when no other homestead has been acquired."

To preserve the place of business, which is separate and distinct from the home, as a part of the homestead, two things must concur: 1st. The head of a family must have a calling or business to which the property is adapted and reasonably necessary. 2d. Such property must be used as a place to exercise the calling or business of the head of the family.

The words " calling " and " business" are evidently used in the constitution in a very broad sense when taken together, but the signification of each one is uncertain; yet we are to infer that they were not used to designate the same thing.

Taken together, they certainly embrace every legitimate avocation in life by which an honest support for a family may be obtained.

The former was probably used in the sense of " profession " or " trade," which would embrace all such employments as by course of study or apprenticeship in any of the learned professions, liberal arts, or mechanical occupations, a person has acquired skill or ability to follow, and which has become practically a matter of personal skill, in its nature not temporary in existence.

The latter word was probably used in contradistinction to the other, to denote that which Mr. Webster defines to be the general meaning of the word, " that which occupies the time, attention and labor of men for the purpose of profit or improvement," and this

may be temporary. The defendant Latimer might not be embraced in the first, but would be embraced in the latter.

The "calling" may exist as a fact, whether it be practiced or not; with the other, the actual employment in the given occupation furnishes the only means to determine whether the "business" exists or not.

With the one as well as with the other, the use of the property in the calling or business of the claimant is essential to preserve the exemption after a sufficient designation has been made.

At the time the property now in question was sold, Latimer was not pursuing the business of a merchant, to which the house and lot were adapted and necessary, but it seems was clerking for other persons; and the fact that his business may have been that of a merchant at a former period cannot affect the question, which is, "What was his business at the time the sale was made?"

Nor can the fact that he contemplated, if he ever became able to do so, to resume the business of a merchant, give to him that character, if it did not exist in fact.

The law no more protects a man in a place to do business which he is not doing, and not making any immediate preparation to do, than it protects to a man a place for a home which is not in fact home, or in reference to which no steps have been taken to make it a home for the family.

The law protects the place of business because it is the place of business, which cannot be unless the head of the family is occupied in a business to which the property is adapted and reasonably necessary.

We conclude, under the facts of this case, that the defendant Latimer did not have any business at the time the sale in question in this cause was made which made the store-house and lot necessary or proper to the exercise of such business.

It matters not what the calling or business of a man may be (and, as we have before said, a calling or business is one of the essentials to entitle a person to an exempted place for its exercise), if he does not use the property for the purpose for which the exemption is given, it will be lost. That the failure to so use the property may result from financial embarrassment does not alter the rule, for the law does not exempt that which a man might like to use, but is unable to use for want of means; but it exempts that which he does use.

If a physician, lawyer, or any other professional man, having an

office in which he had exercised his calling, should abandon his calling, or cease to exercise it, from any cause whatever, whether from inability to follow it or disinclination to do so, and should engage in some other business which did not make such an office necessary or proper, no one would question that it would lose its exemption, if so situated as not to be protected as a part of the home.

When a person who owns property exempted from forced sale by reason of its being used for, and necessary to, the exercise of his calling or business, abandons such calling or business, and embarks in some other which does not require the use of such exempted property, in principle such act amounts to an abandonment of the place of business as fully as does the acquisition of a new home operate an abandonment of the old homestead.

It is true that a temporary renting does not operate an abandonment of the homestead, but that is not the question in this case. The question here is, can a man, after he has ceased to follow a business for which he has used property, and for the exercise of which business such property was necessary and proper, and therefore exempted, who has embarked in other business, to the successful prosecution of which such property is not necessary, hold such property still exempted from the payment of his just debts, simply because he may have a desire or intention at some future time to re-embark in the business which gave the exemption? This question must receive a negative answer.

This action was also brought to recover lots 7, 8, 9, 10, 11 and 12, in block 47, in the town of Texarkana, which plaintiffs in error had also bought at sheriff's sale, made under their execution; but it appears that, prior to any right therein vesting in them, J. D. Latimer, in consideration of money which he had borrowed from his wife, Kittie Latimer, which was her separate property, had sold said lots to his wife, and his deed to her was at once placed upon record. The evidence does not show that this conveyance was fraudulent.

The proof further shows that the rental value of lot 6, on block 21, from the time the plaintiffs in error bought the same until the trial of this cause, was $50 per month. M. W. Edwards, S. Hogan and Mrs. Kittie Latimer were defendants in this action. Edwards and Hogan put in a defense, but offered no proof. Mrs. Latimer set up claim to lots above named, in block 47. The cause having been tried by the court below without a jury, the judgment will be reversed, and such judgment will be rendered in this court as

ought to have been rendered in the court below, which will be that the plaintiffs in error have and recover of J. D. Latimer, M. W. Edwards, S. Hogan and Kittie Latimer, lot number 6, in block 21, in the town of Texarkana, Bowie county, Texas, with the improvements thereon, and that they have their writ of possession therefor to be issued by the district court of Bowie county. And further, that the plaintiffs in error do have and recover from J. D. Latimer for the rent of the property which will be adjudged to them, the sum of $1,221, same to bear interest at the rate of eight per cent. per annum, from the 5th day of March, A. D. 1880. And further, that the plaintiffs in error recover from all the defendants, except Mrs. Kittie Latimer, the costs of this court and of the court below; and judgment will be further entered quieting Mrs. Kittie Latimer in her title to lots 7, 8, 9, 10, 11 and 12, in block 47, in the town of Texarkana, Bowie county, Texas, and for costs in her favor against the plaintiffs in error.

REVERSED AND RENDERED.

[Opinion delivered October 27, 1882.]